# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

## SMITH v BEAUMONT HEALTH

Docket Nos. 167716 and 167720. Argued on application for leave to appeal January 21, 2026. Decided June 30, 2026.

Lawanna Smith, as personal representative of the estate of Jacqueline Harris, filed a complaint in the Oakland Circuit Court against Jack D. Lennox, D.O.; his employer, Tri County Orthopedics, PC; and Beaumont Hospital, alleging medical malpractice. Lennox performed knee replacement surgery on Harris and allegedly failed to prescribe her a prescription-strength anticoagulant. About 30 days after the surgery, Harris died from an acute pulmonary embolism. The complaint was supported by an affidavit of merit (AOM) signed by B. Sonny Bal, M.D., in which he attested, pursuant to MCL 600.2912d, that he was a licensed, practicing physician specializing in orthopedic surgery during the one-year period before the alleged malpractice occurred in May 2019. Plaintiff timely filed a witness list in April 2022, listing Bal as her sole orthopedic surgery expert. The parties scheduled Bal's deposition for August 15, 2022, but Bal had to cancel due to an emergency. On September 16, 2022, plaintiff's counsel told defendants' counsel that he had been unable to obtain new potential dates from Bal for his deposition, and plaintiff, without the trial court's permission, filed an amended witness list, removing Bal and naming John Hall, M.D., as plaintiff's orthopedic surgery expert. The trial court, Nanci J. Grant, J., ordered plaintiff to produce Bal for a deposition by November 2, 2022, and struck the amended witness list. Plaintiff then filed an emergency motion to amend her witness list and, on November 1, 2022, filed an "order of voluntary dismissal" purporting to dismiss all defendants without prejudice. The court rejected plaintiff's attempt to dismiss, and plaintiff moved for voluntary dismissal. The court denied plaintiff's motion for voluntary dismissal and emergency motion to file an amended witness list. Plaintiff moved for reconsideration, which the court also denied, rejecting plaintiff's claim that Bal was uncooperative and noting that, had plaintiff diligently prosecuted her case, she would have realized that Bal was uncooperative or unqualified much sooner than November 2022. The court granted Beaumont's motion for summary disposition and closed the case, concluding that the AOM was invalid because Bal was not engaged in the practice or teaching of medicine in the one-year period before the alleged conduct. Plaintiff appealed as of right and the Court of Appeals, K. F. KELLY, P.J., and CAVANAGH and M. J. KELLY, JJ., held in an unpublished per curiam opinion, issued September 12, 2024 (Docket No. 365062), that the trial court had abused its discretion because its order denying plaintiff's motion to amend considered only prejudice, and it was required to also consider the other factors set forth in *Dean v Tucker*, 182 Mich App 27 (1990). The panel also noted that the court's order had effectively

resulted in the dismissal of plaintiff's action, and the court was required to consider other potential sanctions first. Defendants applied for leave to appeal in the Supreme Court. In lieu of granting leave, the Court ordered and heard oral argument on the applications. ___ Mich ___; 21 NW3d 204 (2025).

In a unanimous opinion by Justice ZAHRA, the Supreme Court, in lieu of granting leave to appeal, *held*:

The correct standard for courts when considering whether to allow a party to amend its witness list is the good-cause standard set forth in MCR 2.401(I)(2); therefore, the Court of Appeals erred by determining that the trial court abused its discretion when it failed to consider the *Dean* factors. Nonetheless, the circuit court abused its discretion by denying plaintiff's motion under the good-cause standard that it purported to apply where the record indicated that plaintiff acted diligently and believed that Bal was qualified to execute the AOM. The circuit court additionally erred by prematurely granting summary disposition on the basis of its flawed decision denying plaintiff's motion to amend her witness list to add an expert witness, which resulted in plaintiff's failure to establish her claim.

1. The Court of Appeals erred by holding that a trial court must consider the *Dean* factors when evaluating a party's motion to amend its witness list. MCR 2.401(I) governs witness lists, and MCR 2.401(I)(2) states that the court may order that any witness not listed in accordance with the rule "will be prohibited from testifying at trial except upon good cause shown." The rule is stated in plain terms, and there is no basis to depart from its plain language. The court rule properly focuses the trial court's attention on the adequacy of the moving party's explanation of good cause along with a showing that the party's conduct supports this explanation. Court of Appeals caselaw supports that the court rule plainly expresses a good-cause standard, and from this caselaw comes basic considerations that are significant to a good-cause analysis. With regard to a party's diligence, such considerations include the timeliness of a party's motion to amend its witness list after discovering the unavailability of a witness, the absence of previous delays, whether the discovery period has concluded, the effect on mediation, and whether the party was made aware of the need to obtain another witness. These considerations demonstrate how application of the *Dean* factors is not an appropriate standard to evaluate a party's motion to amend a witness list. In *Dean*, the Court of Appeals reviewed the trial court's order barring the plaintiff from calling any witnesses as a sanction for failing to timely amend her witness list. The Court of Appeals listed factors to consider in this situation, including (1) whether the violation was willful or accidental; (2) the plaintiff's history of refusing to comply with discovery requests or disclose witnesses; (3) the prejudice to the defendant; (4) notice to the defendant of the witness and how long before trial notice was received; (5) whether the plaintiff engaged in deliberate delay; (6) the plaintiff's compliance with other provisions of the court's order; (7) any attempt by the plaintiff to timely cure the defect; and (8) whether a lesser sanction would better serve the interests of justice. Only Factor (7) primarily relates to good cause. A trial court's application of the *Dean* factors to a motion to amend a witness list does not focus on the most relevant considerations of that inquiry. While the *Dean* factors *could* be relevant, the primary considerations for a court in assessing a motion to amend are the diligence of the moving party and the prejudice that either side would incur from granting or denying the motion.

2. The circuit court abused its discretion under the good-cause standard. The court concluded that if plaintiff had diligently prosecuted her case, she would have realized that Bal was uncooperative or unqualified to testify "much sooner" than she did. However, the record showed that plaintiff was in regular contact with Bal after naming him as her expert in April 2022, and that he was cooperative. Plaintiff suggested many dates to defendants to depose Bal, beginning as early as June and July 2022, but defendants were not available. The parties ultimately agreed that defendants would depose Bal on August 15, 2022, but Bal cancelled because of an emergency. Although the circuit court appeared to have assigned blame to plaintiff for the delay in deposing Bal, much of the delay during September and October 2022 was prompted by defendants' attempt to establish that Bal's AOM was invalid. Additionally, the court's finding that defendants would be prejudiced by granting plaintiff's motion was problematic, given that the type of prejudice relevant to this inquiry occurs from the additional unnecessary expense incurred due to the *moving party's* failure to use due diligence. Summary disposition was prematurely granted because it was predicated on the court's erroneous decision denying plaintiff's motion to amend.

Court of Appeals' judgment reversed in part; case remanded to the circuit court for further proceedings.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED June 30, 2026

STATE OF MICHIGAN

SUPREME COURT

LAWANNA SMITH, Personal
Representative of the ESTATE OF
JACQUELINE HARRIS,

      Plaintiff-Appellee,

v

      No. 167716

BEAUMONT HEALTH,

      Defendant-Appellant,

and

TRI COUNTY ORTHOPEDICS, PC, and
JACK D. LENNOX, D.O.,

      Defendants.

LAWANNA SMITH, Personal
Representative of the ESTATE OF
JACQUELINE HARRIS,

      Plaintiff-Appellee,

BEAUMONT HEALTH,

        Defendant,

and

TRI COUNTY ORTHOPEDICS, PC, and
JACK D. LENNOX, D.O.,

        Defendants-Appellants.

_____

BEFORE THE ENTIRE BENCH

ZAHRA, J.

In this case we address whether the circuit court properly evaluated plaintiff's motion to amend her witness list to add an expert witness without expressly considering the factors set forth in *Dean v Tucker*.[1]  We disagree with the Court of Appeals that consideration of every *Dean* factor is mandatory in this context and hold that the standard applicable to a motion to amend a witness list is set forth in MCR 2.401(I)(2), which states that a "court may order that any witness not listed in accordance with this rule will be prohibited from testifying at trial except upon *good cause* shown." (Emphasis added.)  The *Dean* factors were developed to inform a trial court's decision regarding discovery sanctions that result in dismissal.  The *Dean* factors do not adequately focus on a moving party's diligence in securing an expert witness and instead focus primarily on a party's

---

[1] *Dean v Tucker*, 182 Mich App 27, 32-33; 451 NW2d 571 (1990).  These factors are also described in *Duray Dev, LLC v Perrin*, 288 Mich App 143, 165; 792 NW2d 749 (2010), and the parties in this case sometimes refer to them as the *Dean*/*Duray* factors.

misconduct and violations of discovery orders, which are rarely related to whether "good cause" exists to add an otherwise untimely witness to a party's witness list.

Although we conclude that the Court of Appeals erred by requiring the circuit court to consider the factors set forth in *Dean*, we nonetheless agree with the panel that the circuit court's decision granting defendants summary disposition was premature. The court's decision regarding summary disposition was predicated on its decision to deny plaintiff's motion to amend her witness list, leaving plaintiff without the required expert witness to establish a medical malpractice case. The circuit court's decision to deny plaintiff's motion to amend her witness list is flawed. The court's opinion provides scant discussion of plaintiff's diligence in securing an expert witness and fails to articulate any prejudice to defendants, particularly given that the court mistakenly believed that the discovery period had closed on July 7, 2022, when the court had, in fact, extended discovery until December 12, 2022. That plaintiff's putative expert, Dr. Bal, had not been deposed, and that plaintiff took prompt action to obtain a replacement expert witness who was willing to be deposed within the discovery period, favor granting the motion to amend a witness list.

The circuit court's decision was largely predicated on its conclusion that, "[h]ad Plaintiff diligently prosecuted her case, she would have realized Dr. Bal was uncooperative and/or unqualified to testify much sooner than November of 2022." But this ignores that Dr. Bal had been cooperative until his scheduled date of deposition on August 15, 2022, even offering to make himself available for a deposition as early as June 2022. Given the communications between the parties regarding the scheduling of his deposition, there does not appear to be any question that plaintiff reasonably believed Dr. Bal would have been available as a witness until he suddenly became unavailable.

3

Accordingly, we reverse in part the judgment of the Court of Appeals and remand to the circuit court for further proceedings consistent with this opinion.[2]

## I. BASIC FACTS AND PROCEEDINGS

Defendant Jack D. Lennox, D.O., is an orthopedic surgeon. He performed a total knee replacement surgery on Jacqueline Harris in 2019. After surgery, he advised Harris to take aspirin. About 30 days later, Harris died from an acute pulmonary embolism.

On behalf of Harris's estate, plaintiff filed a complaint on April 9, 2021, naming as defendants Dr. Lennox and his employer, Tri County Orthopedics, PC (collectively, Tri County defendants), and the facility in which the surgery took place, Beaumont Hospital. The complaint alleged that Dr. Lennox's failure to prescribe a prescription-strength anticoagulant was malpractice that caused Harris's death from a blood clot. Plaintiff also alleged claims of vicarious liability against Tri County and Beaumont. The complaint was supported by an affidavit of merit (AOM) signed by B. Sonny Bal, M.D. Dr. Bal attested that "during the relevant time period at issue in this matter, I was a licensed and practicing

---

[2] In addition, the circuit court improperly dismissed the case with prejudice. "[T]he proper remedy" when a court finds an affidavit of merit (AOM) to be defective "is dismissal without prejudice," leaving the plaintiff with "whatever time remains in the period of limitations within which to file a complaint accompanied by a conforming affidavit of merit." *Kirkaldy v Rim*, 478 Mich 581, 586; 734 NW2d 201 (2007). Further, recent caselaw has confirmed that, in cases where a plaintiff uses "an intentional violation of [MCL 600.2912d] to create additional time for filing an AOM or otherwise improperly delay the proceedings[,] a trial court might opt to dismiss the case *with prejudice*." *Ottgen v Katranji*, 511 Mich 223, 239; 999 NW2d 359 (2023). The circuit court in this case did not find that plaintiff intended to improperly delay the proceedings, and unless such a finding is made, dismissal without prejudice would have been the proper remedy.

physician, specializing in Orthopedic Surgery, and devoting a majority of my professional time for the preceding year to[] the clinical practice of orthopedic surgery . . . ."

The circuit court issued an initial scheduling order on June 22, 2021, that required the parties to name their experts and submit witness lists to opposing counsel and the court by May 6, 2022. Plaintiff timely filed a witness list on April 25, 2022. She listed Dr. Bal as her sole orthopedic surgery expert, which matched Dr. Lennox's area of practice. Discovery was originally set to close by June 7, 2022. The parties engaged in discovery and, on June 3, 2022, plaintiff's counsel provided a list of five days in August in which Dr. Bal would be available for in-person deposition.[3] On June 6, 2022, the parties agreed to schedule Dr. Bal's deposition for August 15, 2022. Notably, the next day, the circuit court entered a stipulated order extending the scheduling order dates. In that order, the discovery cutoff date of June 7, 2022, was extended to December 12, 2022, the facilitation date agreed upon by the parties. Trial was scheduled for February 7, 2023.

On August 15, 2022, plaintiff's counsel informed counsel for defendants that Dr. Bal had an emergency and had to cancel the deposition. Plaintiff's counsel indicated that new dates would be offered. Having not received new dates for a deposition, Tri County defendants filed a motion on September 9, 2022, to compel Dr. Bal's deposition within 14 days of entry of an order granting their motion, so as to provide them with sufficient time to prepare motions for summary disposition and prepare for a "meaningful" facilitation.

---

[3] Notably, the proposed deposition dates for Dr. Bal as well as the proposed deposition dates for defendants' expert witnesses were, per the original scheduling order, set for after the close of discovery. This is why the parties soon thereafter stipulated to a discovery extension.

On September 16, 2022, plaintiff's counsel sent correspondence to counsel for defendants indicating that he had been attempting to reconnect with Dr. Bal to obtain new dates for his deposition but "[u]nfortunately, we are having an extraordinarily difficult time doing so without success." That same day, plaintiff's counsel filed an amended witness list naming Dr. John Hall, M.D., as plaintiff's orthopedic surgery expert and removing Dr. Bal. This document was filed without permission from the circuit court.

On September 20, 2022, plaintiff's counsel provided dates for Dr. Hall's deposition to defendants, including October 14, November 4, and November 11, 2022. On September 21, 2022, Tri County defendants filed a motion to strike the amended witness list on the basis that it was untimely filed 133 days after the expert disclosure and witness list deadlines set forth in the original scheduling order, which were not modified by the amended scheduling order. In response, plaintiff represented that Dr. Bal "has not been cooperative, and he needs to be replaced." Plaintiff asserted that Dr. Bal was an "unreliable" expert because of his lack of responsiveness and unavailability, not because of his qualifications.

On October 12, 2022, the circuit court heard arguments on the motions to compel Dr. Bal's deposition and to strike plaintiff's amended witness list. Plaintiff's counsel stated that the motion to compel Dr. Bal's deposition was moot because plaintiff was withdrawing Dr. Bal as an expert. Defense counsel objected, arguing that Tri County defendants were nevertheless entitled to depose Dr. Bal about the assertions made in his AOM regarding his qualifications. The circuit court ordered plaintiff to produce Dr. Bal for a deposition in the next three weeks. In regard to plaintiff's amended witness list, the court chastised plaintiff's counsel for filing the amended witness list without the court's permission rather

6

than filing a motion to amend the witness list. Plaintiff's counsel admitted he had made a mistake, stating, "I should not have done it, your Honor." Two corresponding orders were entered that day, one granting the motion to compel and ordering that Dr. Bal be deposed by November 2, 2022, and the other granting the motion to strike the amended witness list and ordering that "plaintiff may file a motion to amend their witness list to be heard on a later date and time."

One week later, plaintiff filed an emergency motion to amend her witness list, asserting that none of the factors articulated in *Dean* warranted barring plaintiff from amending her witness list as a discovery sanction. Tri County defendants filed a response to the motion to amend, addressing the *Dean* factors and highlighting the prejudice that would result to them if plaintiff were allowed to either voluntarily dismiss the case without prejudice or substitute a new expert, when dismissal was warranted based on Dr. Bal's lack of qualifications to sign the AOM.

In addition, Tri County defendants argued that plaintiff's proffered "good cause" for substituting Dr. Bal—his failure to communicate—was shown to be false by the fact that plaintiff's counsel had communicated with Dr. Bal on the date of his scheduled deposition and then reached out to Dr. Hall only two days later. They argued plaintiff never submitted any evidence of attempts to contact Dr. Bal that went unanswered, nor did plaintiff respond to defendants' request for new deposition dates for Dr. Bal until the day she named Dr. Hall as her new expert. Defendants surmised that the real reason plaintiff wanted to substitute her experts was because Dr. Bal was not qualified to sign the AOM, not because he was an uncooperative witness.

7

On October 26, 2022, plaintiff filed an "Order of Voluntary Dismissal of All Defendants" purporting to dismiss all defendants without prejudice. This filing violated MCR 2.504(A), which requires a voluntary dismissal to be filed either before the defendant answers the complaint or pursuant to a stipulation of dismissal signed by all the parties. The circuit court rejected plaintiff's attempt to dismiss, and plaintiff responded by filing a motion for voluntary dismissal on November 1, 2022, one day before the court-ordered deadline to take Dr. Bal's deposition.

Tri County defendants filed responses to this renewed attempt at voluntary dismissal, and the motion was noticed for hearing the same day as plaintiff's emergency motion to amend the witness list. Several days before the emergency motion was scheduled to be heard, both sets of defendants filed motions for summary disposition to dismiss the complaint due to the invalid AOM. The motions referred to defendants' recent discovery of trial and deposition transcripts from a separate case, in which Dr. Bal had testified that he had retired from practicing and teaching medicine in 2017, and a copy of Dr. Bal's LinkedIn profile confirming the same.

On November 14, 2022, the circuit court issued an order and opinion denying plaintiff's motion for voluntary dismissal without prejudice and plaintiff's motion for leave to file an amended witness list. The order and opinion stated:

> This matter was filed on April 9, 2021. Witness lists in this matter were due by May 6, 2022, with discovery closing on June 7, 2022. Trial in this matter is currently set for February 7, 2023. Allowing an amended witness list at this late stage is also highly prejudicial.

Plaintiff moved for reconsideration of the November 14, 2022 order and opinion and also filed a response to defendants' motions for summary disposition. On December 8,

8

2022, the circuit court issued an order and opinion denying plaintiff's motion for reconsideration, explaining:

> Plaintiff again argues that her witness, Dr. Bal, is being "uncooperative" and that the Court abused its discretion in denying her Motion. The Court disagrees. Dr. Bal signed Plaintiff's Affidavit of Merit. Pursuant to MCL 600.2912d, prior to filing a medical malpractice suit, a plaintiff must obtain an affidavit of merit signed by a physician qualified to testify as to the nature of the alleged malpractice. This must be done at the **outset** of every medical malpractice suit.

> Plaintiff filed her Complaint, along with her Affidavit of Merit, on April 9, 2021. Discovery was open until June 7, 2022. Plaintiff is now claiming Dr. Bal is "uncooperative" despite having over one year to sort out any issues with her experts. Had Plaintiff diligently prosecuted her case, she would have realized Dr. Bal was uncooperative and/or unqualified to testify much sooner than November of 2022. At this stage of the litigation, a voluntary dismissal without prejudice or leave to file an amended witness list is simply inappropriate.

> The Court finds no palpable error.

> Plaintiff's Motion is denied.

The circuit court issued another order and opinion on December 14, 2022, granting Beaumont's motion for summary disposition and closing the case:

> According to Defendant, Dr. Bal ceased practice in November of 2017. The care at issue occurred on May 29th, 2019. Plaintiff has not produced Dr. Bal for deposition, violating the Court's Order to produce him. Dr. Bal's LinkedIn page states that he retired from the clinical practice of medicine in November 2017. He also retired from serving as an adjunct professor at the Missouri University of Science and Technology, as well as serving as a professor of orthopedic surgery at the University of Missouri Health Care in November 2017. In September of 2020, Dr. Bal was deposed in a separate matter where he testified that he had been winding down his practice since 2015. Defendant also attached sworn trial testimony in another matter wherein Dr. Bal confirmed he retired in November of 2017.

9

Based on this deficiency, Beaumont requests dismissal. In Response, Plaintiff argues that the Court should not dismiss the case on this basis because Plaintiff's counsel needs only a "reasonable" belief that the physician signing the affidavit of merit is qualified at the time of signing. Moreover, Plaintiff characterizes this Motion as merely an "unfettered attack upon the credibility of Dr. Bal, which is not a proper basis for summary disposition." In other words, Plaintiff states that the Court should not rely on outside deposition or . . . trial testimony, and instead rely only on the Affidavit of Merit itself, wherein Dr. Bal swears he is qualified to sign.

It is troubling that Plaintiff cautions the Court in relying upon deposition and trial testimony from other cases when Plaintiff cannot produce any evidence from her own witness to refute what Defendant is arguing. Again, this case was filed in April of 2021. Plaintiff retained Dr. Bal prior to that date because he signed her Affidavit of Merit. Plaintiff had over one year to work out any issues with her experts. The Court agrees that Plaintiff's counsel may "reasonably" rely upon the statements of experts, but discovery ended in June of 2022: over one year after her Complaint was filed. Dr. Bal was the expert she relied upon to file her claim in the first place. He has not been produced for deposition and Plaintiff has not attached any evidence of any kind indicating that he was in fact qualified to sign the Affidavit of Merit in this case.

The circuit court continued:

Plaintiff merely points to the Affidavit of Merit itself. However, the Affidavit of Merit is being directly challenged in this Motion. Therefore, it is Plaintiff's burden to produce evidence which creates a genuine issue of material fact as to the validity of the Affidavit of Merit. Plaintiff cannot simply argue that the Affidavit is valid without providing any substantiating evidence, as it is being directly challenged through sworn testimony provided by Defendant.

"As the federal courts have aptly noted under the analogous federal summary judgment standards, once discovery is closed the summary disposition hearing becomes the 'put up or shut up' stage of the proceeding, and if there is no factual support for a claim, it will not continue." *Pena v Ingham County Road Com'n*, 255 Mich App 299, n 4[; 660 NW2d 351] (2003).

Here, Defendant provided sworn testimony which suggests the statements contained in Plaintiff's Affidavit of Merit surrounding Dr. Bal's

10

qualifications are untrue. Namely, that he was engaged in practice or teaching in the one-year period prior to the alleged conduct. Plaintiff has not come forward with any evidence to suggest otherwise.

Defendant's Motion is granted.

The Court finds Plaintiff's Affidavit of Merit invalid. Absent a valid affidavit of merit, a complaint for medical malpractice fails as a matter of law. Therefore, this is a final order and closes the case.

Plaintiff filed a motion for reconsideration, which was denied.

Plaintiff appealed as of right in the Court of Appeals.[4] The panel concluded that "[t]he trial court's denial of the motion [to amend the witness list] effectively was a dismissal,"[5] explaining that "the trial court's order made it so plaintiff did not have an expert witness regarding standard of care and breach."[6] The panel elaborated:

> Because plaintiff no longer had an expert witness, plaintiff could not prove two necessary elements. This was fatal to plaintiff's claims in this case. As a result, the trial court's order disallowing plaintiff from exchanging Dr. Bal for Dr. Hall was an effective dismissal because plaintiff could not possibly prove the claims brought in the complaint. Indeed, the effect of the order was clear when, just one month later, the trial court ordered the case dismissed because Dr. Bal was not qualified to be an expert witness in the case, which meant he had not been qualified to provide the AOM.[7]

The panel then highlighted that caselaw provides that "when an order that precludes a witness from testifying would effectively result in a dismissal, the trial court must engage

[4] *Smith v Beaumont Health*, unpublished per curiam opinion of the Court of Appeals, issued September 12, 2024 (Docket No. 365062).

[5] *Id*. at 5.

[6] *Id*.

[7] *Id*. at 5-6 (citations omitted).

11

in more rigorous considerations before doing so."[8]   The panel explained that the circuit court's order denying plaintiff's motion to amend considered only prejudice.  The panel reasoned that,

> [w]hile prejudice to the defense is one of the *Dean* factors, it is not the only one.  Moreover, as this Court has stated, the trial court *must* consider other potential sanctions on the record before entering an order that effectively amounts to a dismissal.  In the simplest terms, and as is evident from the above quotation, the trial court did not do that; and, as a result, abused its discretion as a matter of law.[9]

Tri County defendants and Beamont filed separate applications for leave to appeal in this Court.  We ordered oral argument on the application in both cases to address

> whether the Court of Appeals correctly held that the Oakland Circuit Court abused its discretion when it failed to consider the factors set forth in *Dean v Tucker*, 182 Mich App 27 (1990), during its consideration of the plaintiff's

---

[8] *Id*. at 6.  In support, the panel pointed to several cases, including *Dean*, addressing discovery sanctions that resulted in dismissal.  Specifically, the panel cited *Dean*, 182 Mich App at 32 ("Where the sanction is the barring of an expert witness resulting in the dismissal of the plaintiff's action, the sanction should be exercised cautiously."); *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 305; 14 NW3d 472 (2023) (Trial courts have "the broad inherent power . . . to address misconduct and sanction the parties and lawyers who appear before the court."); *Gueye v State Farm Mut Auto Ins Co*, 343 Mich App 473, 489; 997 NW2d 307 (2022) (emphasizing that, while dismissal is a potential sanction, Michigan law favors the "disposition [of] litigation on the merits") (quotation marks and citation omitted; alteration in *Gueye*); *Vicencio v Jaime Ramirez, MD, PC*, 211 Mich App 501, 506-507; 536 NW2d 280 (1995) ("Before imposing such a sanction, the trial court is required to carefully evaluate all available options on the record and conclude that the sanction of dismissal is just and proper. . . .  [B]ecause the trial court did not evaluate other available options on the record, it abused its discretion in dismissing the case.").

[9] *Smith*, unpub op at 7 (citation omitted).

motion to amend her witness list to add an expert witness. See MCR
2.401(I)(2).[10]

## II. STANDARD FOR DECIDING A MOTION TO AMEND A WITNESS LIST

### A. STANDARD OF REVIEW

We recently explained that questions involving the proper interpretation of statutes
and our court rules are questions of law, which are reviewed de novo.[11] " 'De novo review
means we review the legal issues independently without deferring to the legal interpretation
of the lower courts.' "[12]

### B. DISCUSSION

MCR 2.401 governs pretrial procedures in the circuit court. MCR 2.401(A) and (B)
provide that the circuit court may direct the parties' appearance at an early scheduling
conference after the commencement of the action. At the early scheduling conference, a
circuit court must issue a scheduling order establishing the times for events, including the
exchange of witness lists.[13]

MCR 2.401(I) governs witness lists. Under MCR 2.401(I)(1), parties are required
to file and serve witness lists "[n]o later than the time directed by the court" in its

---

[10] *Smith v Beaumont Health*, ___ Mich ___, ___; 21 NW3d 204, 204 (2025).

[11] *Hairston v LKU*, ___ Mich ___; ___ NW3d ___ (April 4, 2025) (Docket No. 166473);
slip op at 8, citing *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 553; 640
NW2d 256 (2002) (explaining that "interpretation of a court rule, like a matter of statutory
interpretation, is a question of law").

[12] *Hairston*, ___ Mich at ___; slip op at 8, quoting *Carter v DTN Mgt Co*, 515 Mich 61, 73;
28 NW3d 291 (2024).

[13] MCR 2.401(B)(2)(a)(vi).

scheduling order. MCR 2.401(I)(2) states: "The court may order that any witness not listed in accordance with this rule will be prohibited from testifying at trial except upon good cause shown." Good cause is a "satisfactory, sound or valid reason."[14]

We conclude that MCR 2.401(I)(2) is stated in plain terms and that there is no basis to depart from the plain language of the court rule. The court rule properly focuses the trial court's attention on the adequacy of the party's explanation of "good cause" along with a "showing" that the party's conduct supports this explanation, such as diligent efforts to mitigate prejudice to the other parties.

Not only does the court rule plainly express a "good cause" standard, several published decisions from the Court of Appeals support this understanding. The most apt of these cases is *Tisbury v Armstrong*.[15] There, the trial court denied the plaintiffs' motion for an adjournment and their motion to amend their witness list on July 21, 1989.[16] "In an attempt to show good cause, [the] plaintiffs alleged that on July 11, 1989, their witness informed them that he would not testify in their behalf and that 'at no time did this expert ever indicate in any way, shape or form, that he was not going to testify.' "[17]

---

[14] *People v Buie*, 491 Mich 294, 319; 817 NW2d 33 (2012) (quotation marks omitted); see also *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 264; 833 NW2d 331 (2013).

[15] *Tisbury v Armstrong*, 194 Mich App 19; 486 NW2d 51 (1991).

[16] *Id*. at 20.

[17] *Id*. at 20-21.

The panel reasoned that the "plaintiffs provided an adequate explanation for the absence of their expert witness, and we do not believe any prejudice would have resulted if their motions had been granted."[18] In terms of prejudice, the panel highlighted that "[t]he original expert witness had not yet been deposed and there would not necessarily have been any effect on mediation."[19] The panel also noted that, "[i]n addition, there is no indication on the record that the trial had been repeatedly postponed because of a lack of diligence on [the] plaintiffs' part."[20] Finally, the panel found it significant that the court's decision on plaintiff's motion put an end to this lawsuit. "Given the policy of this state favoring the meritorious determination of issues, . . . we do not believe that the drastic remedy of summary disposition is appropriate in this case."[21]

In another analogous case, *Levinson v Sklar*,[22] the plaintiffs

> originally identified Dr. Barbara Carruthers as their expert. Sometime after mediation, without leave of the court or stipulation by the parties, plaintiffs filed a supplemental witness list identifying Dr. Roy Selby as their new expert witness. [Defendant] brought a motion to strike the supplemental witness list because Dr. Selby had been identified as a witness after the deadline for discovery. Plaintiffs argued there was no prejudice to defendants in the substitution of Dr. Selby for Dr. Carruthers, as defendants had not yet deposed Dr. Carruthers. The judge denied the substitution, concluding it would destroy the effect of mediation. He

---

[18] *Id*. at 21.

[19] *Id*. at 21.

[20] *Id*.

[21] *Id*., citing *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982).

[22] *Levinson v Sklar*, 181 Mich App 693; 449 NW2d 682 (1989).

granted the motion to strike the supplemental witness list and dismissed the claim.[23]

The Court of Appeals reversed. The panel acknowledged that the plaintiffs' request came within two months of the original trial date, but concluded that the request would not have resulted in prejudice to the defendants. The panel highlighted that "[t]he original expert witness had not yet been deposed. Further, there would not necessarily have been an effect on the mediation recommendation, since Dr. Carruthers' testimony had not been available to the mediators."[24]

We also consider a more recent case in which the Court of Appeals affirmed the trial court's decision to deny the plaintiff's motion to substitute an expert witness. In *Cox v Hartman*,[25] the plaintiff argued that the trial court erred by concluding that the plaintiff's motion to add an expert witness was untimely after the trial court had ruled that her originally proposed expert witness, Claudia A. Beckmann, was not qualified.[26] The panel pointed out that the "[p]laintiff did not move to add a new expert until June 10, 2016, which was four days after the trial court had entered its June 6, 2016 order granting summary disposition in favor of defendants."[27] More significantly, the

---

[23] *Id*. at 698-699.

[24] *Id*. at 699.

[25] *Cox v Hartman*, 322 Mich App 292; 911 NW2d 219 (2017).

[26] *Id*. at 297-298.

[27] *Id*. at 312.

panel highlighted that the plaintiff could have sought to add a new expert witness much

earlier because she

> was on notice that there was at least a question concerning Beckmann's
> qualification to testify. At Beckmann's deposition in August 2015, it
> became clear that Beckmann devoted a majority of her professional time in
> the year preceding the alleged malpractice to instructing or practicing as a
> nurse practitioner rather than a registered nurse. In November 2015,
> defendants moved for summary disposition on the basis of Beckmann's lack
> of qualification to testify; by this point, plaintiff was plainly on notice that
> Beckmann's qualification as an expert witness was in question. Although
> the trial court initially ruled in plaintiff's favor on the summary disposition
> issue on February 2, 2016, the trial court granted reconsideration of its
> decision on March 31, 2016, allowing the parties to file supplemental briefs
> on the issue. Hence, plaintiff's suggestion that she could not have known
> that she needed to obtain an expert other than Beckmann until the trial court
> actually granted summary disposition on June 6, 2016, lacks merit. In
> opposing defendant's motion for summary disposition, plaintiff chose to
> rely entirely on Beckmann as an expert rather than seek to add another
> expert at that time; this was plaintiff's choice. The trial court then granted
> summary disposition to defendants because Beckmann was unqualified and
> plaintiff had presented no other expert to testify concerning the standard of
> care. The trial court did not err by concluding that plaintiff's motion was
> untimely.[28]

From these decisions, we glean some basic considerations that are significant to a

"good cause" analysis. With regard to a party's diligence, such considerations include the

timeliness of a party's motion to amend its witness list after discovering the unavailability

of a witness;[29] the absence of repeated previous delays; whether the discovery period has

---

[28] *Id*. at 313.

[29] See *id*. at 312-313.

concluded;[30] the effect on mediation (i.e., case evaluation);[31] and whether the party was made aware of a need to obtain another witness.[32]

---

[30] See *Howard-Reed v Braver*, unpublished per curiam opinion of the Court of Appeals, issued May 19, 2022 (Docket No. 356200) (affirming the trial court's denial of the plaintiff's motion to substitute an expert witness after the initial expert had been deposed and found unqualified and discovery had closed); *Pawlowski v Kosar*, unpublished per curiam opinion of the Court of Appeals, issued May 30, 2024 (Docket No. 365803) (affirming the trial court's denial of the plaintiff's motion to substitute an expert witness because the plaintiff waited until her expert was found unqualified before filing the motion); *Morris v St Clair Orthopaedics & Sports Med, PC*, unpublished per curiam opinion of the Court of Appeals, issued September 19, 2024 (Docket No. 367109), p 5 ("Plaintiff should have been aware of the information conveyed or provided to [her expert] and could have avoided this issue by naming an additional expert witness on her witness list from the outset or taking the deposition of [her expert] earlier. By waiting until the last day of discovery to depose [her expert], plaintiff risked that deficiencies in her expert's testimony would fail to support the medical malpractice alleged or limit her damages (from five weeks to two weeks), and she would not have a remedy.").

[31] *Tisbury*, 194 Mich App at 20-21. At the time *Tisbury* was decided, mediation was mandatory. See MCR 2.403(A)(2), as amended September 25, 1987, and October 23, 1987, 429 Mich cvii (1988), and MCR 2.403(A)(2), as amended July 2, 1991, 437 Mich clxxix (1991). In 2000, this Court amended several court rules "mainly to change terminology, replacing 'mediation,' as used in current MCR 2.403, with the term 'case evaluation.'" MCR 2.403, 462 Mich cxix, cxx (staff comment). MCR 2.403 was again amended in 2022. The court may still submit any civil action to case evaluation, though the parties may now stipulate to an administrative dispute resolution process. While mediation is no longer mandatory, courts may still consider whether granting a motion to add a new witness affects the alternative dispute resolution process or case evaluation.

[32] See *Witt v Glazer*, unpublished per curiam opinion of the Court of Appeals, issued January 20, 2011 (Docket No. 294057), p 8 ("The trial court did not abuse its discretion by determining that [plaintiff] failed to establish good cause to adjourn trial and to amend her expert witness list. [Plaintiff's] counsel conceded in the trial court, as he does in this Court, that he was aware that [plaintiff's expert] was not qualified to offer expert testimony. Counsel was aware of this fact at least by the time of [plaintiff's expert's] September 29, 2008 deposition. Yet counsel chose not to obtain a witness who was qualified to offer relevant and necessary standard of care testimony."); *Pawlowski*, unpub op at 3.

In terms of prejudice, the lack of diligence itself may be prejudicial to the opposing party because of the increased costs of unnecessary litigation, for example, when the originally proposed expert witness has already been deposed, or, while not relevant here, when a substitute expert provides a different theory of the case, i.e., trial by surprise. Moreover, as *Tisbury* recognized, whether the party making the request may be prejudiced by denial of the motion is also relevant in assessing whether there is "good cause" to grant a motion to amend.[33] We note that these considerations are basic generalities that may be supplemented by relevant caselaw, but we cite them to demonstrate how application of the *Dean* factors is not an appropriate standard to evaluate a party's motion to amend a witness list.

In *Dean*, the plaintiff failed to file a witness list by the deadline, contrary to MCR 2.401(I)(1).[34] As a sanction, the trial court held that the plaintiff could not call any witnesses.[35] The court then granted the defendant's motion for summary disposition.[36] The plaintiff appealed, and the Court of Appeals reversed.[37] In its analysis, the Court listed factors to be considered when a party is being sanctioned and prevented from calling a witness, including: (1) whether the violation was willful or accidental; (2) the plaintiff's history of refusing to comply with discovery requests or disclose witnesses; (3) the

---

[33] See *Tisbury*, 194 Mich App at 21.

[34] See *Dean*, 182 Mich App at 29.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 29, 35.

prejudice to the defendant; (4) notice to the defendant of the witness and how long before trial notice was received; (5) whether the plaintiff engaged in deliberate delay; (6) the plaintiff's compliance with other provisions of the court's order; (7) any attempt by the plaintiff to timely cure the defect; and (8) whether a lesser sanction would better serve the interests of justice.[38]

These factors are based on caselaw cited in support of each of the factors.[39]  A review of these cases reveals that these factors are primarily concerned with a sanctioned party's conduct.  Several cases are cited in support of *Dean* Factor (1), whether the violation was willful or accidental.[40]  These cases considered the failure of an agent of the plaintiff to appear at the agent's deposition,[41] the failure to produce expert witnesses for deposition as required under a court order,[42] the failure to comply with an order of discovery,[43] a protracted course of conduct that resulted in the frustration of two of the defendants' attempts to obtain discovery pertinent to medical issues,[44] an attorney's failure

---

[38] *Id*. at 32-33.  These factors are also described in *Duray Dev, LLC*, 288 Mich App at 165, and the parties in this case sometimes refer to them as the *Dean*/*Duray* factors.

[39] See *Dean*, 182 Mich App at 32-33.

[40] See *id*. at 32 & n 3.

[41] *MacArthur Patton Christian Ass'n v Farm Bureau Ins Group*, 403 Mich 474; 270 NW2d 101 (1978).

[42] *Houston v Southwest Detroit Hosp*, 166 Mich App 623, 625; 420 NW2d 835 (1987).

[43] *Daugherty v Michigan (After Second Remand)*, 163 Mich App 697, 699; 415 NW2d 279 (1987).

[44] *Bellok v Koths*, 163 Mich App 780; 415 NW2d 18 (1987); *Middleton v Margulis*, 162 Mich App 218; 412 NW2d 268 (1987).

to attend a deposition,[45] and "consciously dilatory behavior on the part of plaintiff."[46] Several of these cases are also cited in support of *Dean* Factor (2), the plaintiff's history of refusing to comply with discovery requests or disclose witnesses.[47] Cases cited in support of *Dean* Factor (3), the prejudice to the defendant, concern administrative dismissals for lack of progress and surprise expert testimony.[48] Cases supporting *Dean* Factor (4), actual notice to the defendant, primarily address surprise expert testimony.[49] *Dean* Factor (5), the plaintiff's history of engaging in deliberate delay, is essentially supported by the same cases that support *Dean* Factor (2). *Dean* Factor (6), the degree of compliance by the plaintiff with other provisions of the court's order, appears to be a rarely applied factor that may be triggered by a protracted course of conduct to frustrate discovery.[50] *Dean* does not cite any caselaw in support of Factor (7), any attempt by the plaintiff to timely cure the defect, but it is the only factor primarily relating to whether a party had "good cause." Finally, *Dean* Factor (8), "whether a lesser sanction would better serve the interests of

---

[45] *Middleton*, 162 Mich App at 220-221.

[46] *Edge v Ramos*, 160 Mich App 231, 235; 407 NW2d 625 (1987).

[47] See *Dean*, 182 Mich App at 32-33 & n 4, citing *MacArthur Patton Christian Ass'n*, 403 Mich at 477; *Bellok*, 163 Mich App at 783; and *Middleton*, 162 Mich App at 223. *Dean* also cited *North v Dep't of Mental Health*, 427 Mich 659, 662; 397 NW2d 793 (1986), which addressed administrative dismissals for lack of progress, in support of Factor 2. See *Dean*, 182 Mich App at 32-33 & n 4.

[48] *Dean*, 182 Mich App at 33 n 5, citing *North*, 427 Mich at 662, and *Pollum v Borman's, Inc*, 149 Mich App 57, 62-63; 385 NW2d 724 (1986).

[49] *Dean*, 182 Mich App at 33 n 6, citing *Pollum*, 149 Mich App at 62-63.

[50] See *Dean*, 182 Mich App at 33, citing *Daugherty*, 163 Mich App at 702.

justice,"[51] implicates all of the cases cited in support of the other *Dean* factors because all of those cases concerned sanctions.[52] Unlike MCR 2.401(I)(2), which allows the court to prohibit a witness from testifying if they are not listed in accordance with the court rule, MCR 2.313(B), which addresses the failure to comply with orders compelling disclosure or discovery, expressly lists a host of varying sanctions that the court may consider.

As a standard for determining sanctions, it makes sense that the *Dean* factors primarily focus on the moving party's actions and any history of misconduct during the litigation. "The sanctioning court is in a position to determine what sanction would be appropriate for curbing the sanctioned behavior, restoring order to the proceeding, and chastising the abuser for the improper conduct. In other words, because discovery sanctions are to be proportionate and just, it would be imprudent to attempt to delineate a bright-line rule."[53]

However, a trial court's application of the *Dean* factors to a motion to amend a witness list does not focus on the most relevant considerations of that inquiry, such as whether the initial expert had been deposed, whether discovery had ended, whether a party filed a motion to amend a witness list before the opposing party filed a dispositive motion relating to the expert, whether a party chose to litigate their expert's qualifications, and whether either party would be prejudiced by granting or denying the motion. Indeed, five of the eight *Dean* factors focus on the moving party's sanctioned misconduct and history

---

[51] *Dean*, 182 Mich App at 33.

[52] See *Dean*, 182 Mich App at 33 n 9.

[53] *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 87; 618 NW2d 66 (2000).

of misconduct during the litigation, which was **not** the focus in **any** of the above-cited cases that address amending a witness list under the applicable "good cause" standard. In sum, we conclude that the Court of Appeals erred by holding that a trial court must consider the *Dean* factors when evaluating a party's motion to amend its witness list. While such factors *could* be relevant, the primary considerations for a trial court in assessing such a motion are (1) the diligence of the moving party and (2) the prejudice that either side would incur from granting or denying the motion.

## III. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's determination regarding a motion for summary disposition.[54] A motion for summary disposition under MCR 2.116(C)(10) requires the reviewing court to consider "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."[55] The decision whether to allow a party to add an expert witness is within the discretion of the trial court.[56] "An abuse of

---

[54] *Beals v Michigan*, 497 Mich 363, 369-370; 871 NW2d 5 (2015).

[55] *Brown v Brown*, 478 Mich 545, 551-552; 739 NW2d 313 (2007) (citation omitted).

[56] *Cox*, 322 Mich App at 312.

discretion occurs when the decision results in an outcome falling outside the principled range of outcomes."[57]

## B.  DISCUSSION

Although the Court of Appeals did not reach the merits of the circuit court's decision denying plaintiff's motion to amend her witness list, we conclude that the circuit court abused its discretion under the "good cause" standard that it purported to apply.  The emphasis of the "good cause" standard is on a party's diligence in securing a witness and on prejudice to either side.  In terms of diligence, the court tersely concluded that "[p]laintiff is now claiming Dr. Bal is 'uncooperative' despite having over one year to sort out any issues with her experts.  Had Plaintiff diligently prosecuted her case, she would have realized Dr. Bal was uncooperative and/or unqualified to testify much sooner than November of 2022."

However, the record reflects that plaintiff was in regular contact with Dr. Bal after he was named as an expert witness on April 25, 2022, during which time he was cooperative.  On April 28, 2022, plaintiff wrote to defendants, indicating that Dr. Bal was "[u]navailable on Fridays," but "[f]lexible for the months of June and July with the exception [of] the week of July 12th through July 19th."  Defendants in turn suggested June 20, 2022, but Dr. Bal was not available.  Plaintiff then suggested June 23, 2022, or July 6, 2022, but those dates did not work for defendants.  On May 16, 2022, plaintiff suggested additional dates in 2022 for Dr. Bal's deposition, including June 7, 9, and 16.  On May 24,

---

[57] *People v Scott*, 513 Mich 180, 200; 15 NW3d 59 (2024).

2022, defendants wrote to plaintiff that "[c]ase evaluation is on the horizon (July), discovery is set to end in early June, and based on the current scheduling for expert witnesses, we will need additional time to depose [these] experts prior to case evaluation. Would you be willing to stipulate to a 90 day adjournment?" Plaintiff agreed. After the stipulated adjournment was entered, plaintiff offered dates as early as June 15, 2022, to depose Dr. Bal. It was only after defendants indicated they were not available on June 15, 2022, or July 15, 2022, that plaintiff offered deposition dates in August 2022. The August 15, 2022, deposition date was finalized by the parties on June 6, 2022.

The record reveals that plaintiff was in regular contact with Dr. Bal from April 28, 2022 to June 6, 2022. Plaintiff's repeated attempts to schedule Dr. Bal's deposition earlier than August 15, 2022, are highly reflective of plaintiff's diligence and belief that Dr. Bal was qualified to execute the AOM. Yet it appears that the circuit court assigned blame to plaintiff for the two-month gap between the originally scheduled date of Dr. Bal's deposition and August 15, 2022. But plaintiff offered to have Dr. Bal deposed as early as June 2022. Further, the court's passing remark that if plaintiff had been diligent, her proposed expert would have been deposed "much sooner than November of 2022" does not appreciate that much of the delay during September and October was prompted by defendants' attempt to establish that Dr. Bal's AOM was invalid.

The trial court's terse statement that defendants would be prejudiced by granting the motion is similarly problematic. As noted, generally, the type of prejudice relevant to this inquiry occurs from the additional unnecessary expense incurred *due to the moving party's failure to use due diligence*. Moreover, the trial court's prejudice assessment was

25

seemingly based on its mistaken belief that discovery was closed when plaintiff filed the motion to amend, when in fact it was still open for another five months.

Because the court's decision granting summary disposition was predicated on its erroneous decision denying plaintiff's motion to amend her witness list to add an expert witness, which resulted in plaintiff's failure to establish her claim, we conclude that summary disposition was prematurely granted.

## IV. CONCLUSION

We hold that the Court of Appeals erred by holding that a trial court must consider the *Dean* factors when evaluating a party's motion to amend its witness list. We hold that the correct standard is set forth in MCR 2.401(I)(2), which states that a "court may order that any witness not listed in accordance with this rule will be prohibited from testifying at trial except upon *good cause* shown." (Emphasis added.) Nonetheless, we agree with the Court of Appeals that the circuit erred by granting summary disposition because its ruling was predicated on the court's flawed decision denying plaintiff's motion to amend her witness list to add an expert witness. We remand this case to the circuit court for further proceedings consistent with this opinion.

Brian K. Zahra
Megan K. Cavanagh
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

26